UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| JAMES DARNELL BLACK,<br><br>Petitioner,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Respondent, | Case No.: 1:18-cv-00415-BLW-REB<br><br>**REPORT AND RECOMMENDATION**<br><br>**and**<br><br>**ORDER RE: PETITION FOR RECONSIDERATION OF APPOINTMENT OF COUNSEL (Dkt. 23)** |

Before the Court is (1) Petitioner James Darnell Black's Petition for Review (Dkt. 3), seeking review of the Social Security Administration's denial of his application for Social Security Disability benefits for lack of disability,[1] and (2) Petition for Reconsideration of Appointment of Council (Dkt. 23). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Report and Recommendation and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On May 8, 2013, James Darnell Black ("Petitioner") filed an application for supplemental security income, alleging disability beginning December 1, 2010. This claim was initially denied on July 16, 2013 and, again, on reconsideration on December 17, 2014. On May 5, 2015, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On August 23, 2017,[2] ALJ Jennifer Millington held a hearing in Denver, Colorado, at which time Petitioner

---

[1] Petitioner also recently filed a Motion for Summary Judgment (Dkt. 41) which largely tracks the arguments made in his opening brief.

[2] Petitioner, Respondent, and the ALJ each references an August 23, 2017 hearing in Denver, Colorado. The administrative record, however, includes a hearing on June 21, 2016. (AR 33-59).

**MEMORANDUM DECISION AND ORDER - 1**

(representing himself) appeared and testified.  William Tysdal, an impartial vocational expert, also appeared and testified at the same August 23, 2017 hearing.

On September 7, 2017, the ALJ issued a Decision denying Petitioner's claim, finding that he was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council and, on June 25, 2018, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner (again representing himself)[3] timely filed the instant action on September 27, 2018, arguing that he ALJ's disability determination was erroneous and contrary to applicable standards of law.  *See generally* Pet. for Review (Dkt. 1).  Specifically, Petitioner claims that (1) the ALJ "erred in denying social security disability benefits to [Petitioner] who is intellectually disabled"; and (2) the ALJ "erred by not obtaining complete psychiatric records of [Petitioner] before concluding that [Petitioner] was not entitled to social security disability."  *See* Informal Brief, pp. 2-10 (Dkt. 36).  Petitioner therefore requests that the Court either reverse the ALJ's Decision and find that he is entitled to disability benefits or, alternatively, remand the case for further proceedings.  *See id*. at pp. 10-11; *see also* Pet. for Review, p. 10 (Dkt. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*,

---

[3] With his underlying Petition for Review, Petitioner also filed a Motion to Appoint Counsel on September 27, 2018.  *See* Mot. to Appoint Counsel (Dkt. 5).  That Motion was denied on October 19, 2018.  *See* Order (Dkt. 10).  On February 11, 2019, Petitioner again moved the court to appoint counsel.  *See* Pet. for Recons. (Dkt. 23).  That Motion is resolved here by separate Order.  *See infra*.

**MEMORANDUM DECISION AND ORDER - 2**

981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The standard is fluid and nuanced, requiring more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the entire record to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed or remanded for legal error. *See Matney*, 981 F.2d at 1019. The

**MEMORANDUM DECISION AND ORDER - 3**

ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, to be clear, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  REPORT

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since May 8, 2013, the application date." (AR 18).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration

**MEMORANDUM DECISION AND ORDER - 4**

requirement. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following medically determinable impairments: "diabetes mellitus with neuropathy, degenerative disc disease, seizure disorder, asthma, hypertension, depression, and cocaine abuse." (AR 18).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id.* Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 18-19).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from

**MEMORANDUM DECISION AND ORDER - 5**

his impairments.  *See* 20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  On this point, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can never climb ladders, ropes, or scaffolds, but can frequently climb ramps and stairs.  He can frequently balance, stoop, kneel, crouch, and crawl.  He can frequently handle and finger bilaterally.  He should avoid hazards, such as heights and moving machinery.  He can tolerate only occasional exposure to dust, fumes, and other pulmonary irritants.  He is limited to unskilled work with occasional work interactions with coworkers, supervisors, and the public.

(AR 20).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  Here, the ALJ found that Petitioner has no past relevant work, but found that jobs exist in significant numbers in the national economy that Petitioner can perform, including "cafeteria attendant," "electronics worker," and "mail clerk."  (AR 23-24).  Therefore, based on Petitioner's age, education, and RFC, the ALJ concluded that Petitioner "has not been under a disability as defined in the Social Security Act since May 8, 2013, the date the application was filed."  (AR 24) (internal citations omitted).

///

///

**MEMORANDUM DECISION AND ORDER - 6**

B.   Analysis

Petitioner contends that the ALJ erred by (1) failing to conclude at the third step of the sequential process that he is presumptively disabled under Listing 12.05C,[4] and (2) not obtaining his complete psychiatric records before issuing a disability determination. *See* Informal Brief, pp. 2-10 (Dkt. 36). Each issue is addressed below.

    1.    <u>The ALJ Did Not Err in Evaluating Whether the Severity of Petitioner's Impairments Meet or Medically Equal Listing 12.05C at Step Three of the Sequential Process</u>

As discussed above, an ALJ must evaluate a claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(d); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that impairment." *See* SSR 83-19; *see also* 20 C.F.R. § 404.1525; *Tackett*, 190 F.3d at 1099 (impairment meets or equals listed impairment only if medical findings

---

[4] On January 17, 2017, significant revisions became effective in the Listings criteria used to evaluate claims involving mental disorders. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (available at 2016 WL 5341732). The changes included revisions to Listing 12.05, including the elimination of 12.05C. *See* 20 C.F.R. § 404, Subpt. P, App. 1 (Jan. 17, 2017). These changes went into effect *after* Petitioner's application for disability benefits, but *before* the ALJ's September 7, 2017 Decision. Courts in this Circuit have, on more than one occasion, construed Ninth Circuit law as requiring an ALJ to apply the Listings in effect at the time of a claimant's application. *See, e.g.*, *Maines v. Colvin*, 666 Fed. Appx. 607, 608 (9th Cir. 2016) ("A claimant's eligibility for benefits, once determined, is effective based on the date his or her application is filed. Absent express direction from Congress to the contrary, the ALJ should have continued to evaluate [the] application under the Listings in effect at the time she filed her application.") (internal citation omitted); *but see* 81 Fed. Reg. 66138-01 (available at 2016 WL 5341732) ("When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, *and to claims that are pending on or after the effective date*.") (emphasis added). Without addressing the issue of retroactivity here, the Court analyzes Petitioner's claim according to how he has presented it to the Court (in the context of Listing 12.05C (pre-revisions)), recognizing that its resolution similarly applies to Listing 12.05B (post-revisions) – in other words, any differences between the two Listings is immaterial on this record.

**MEMORANDUM DECISION AND ORDER - 7**

(defined as set of symptoms, signs, and laboratory findings) are at least equivalent in severity to set of medical findings for listed impairment). Though a claimant's burden to establish, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the Listing if they adequately summarize and evaluate the evidence. *See Gonzalez*, 914 F.2d at 1200-01; *Lewis*, 236 F.3d at 512.[5]

Petitioner argues that the ALJ erred in determining that his impairments do not meet Listing 12.05 (variously referred to as "intellectual disorder," "intellectual disability," or "mental retardation") – specifically Paragraph C of Listing 12.05. *See* Informal Brief, p. 4 (Dkt. 36) ("It is [Petitioner's] position that his documented IQ scores by multiple psychologists over the years would automatically qualify [him] for social security disability."). Listing 12.05 establishes the criteria for intellectual disability. *See* 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05. It is different from other mental disorder Listings in that it contains an introductory paragraph with a diagnostic description for intellectual disability and four sets of criteria. *See* 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00A. Under Listing 12.05, a claimant must satisfy the diagnostic description and any one of four sets of severity criteria – paragraphs A, B, C, or D. *See id.*

The diagnostic description provides that "intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of

---

[5] For example, here, though addressing Petitioner's claimed "mental retardation," the ALJ did not specifically consider Listing 12.05 presumably because, in the ALJ's mind, that Listing did not apply.

**MEMORANDUM DECISION AND ORDER - 8**

the impairment before age 22." *Id*. at 12.05. Paragraph "C," which Petitioner argues is at issue here, additionally requires "a valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05C; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).[6]

With all this in mind, a claimant must establish the following three prongs to prove he meets Listing 12.05C: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 through 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation. *See Kennedy v. Colvin*, 738 F.3d 1172, 1175-76 (9th Cir. 2013). Respondent argues that Petitioner did not meet his burden of proof within Listing 12.05C because (1) he did not have a valid IQ score of 70 or below, and (2) the evidence did not demonstrate or support the onset of an impairment of an intellectual disability before age 22. *See* Respt.'s Brief, pp. 8-16 (Dkt. 38). The undersigned generally agrees.

      a.    *A Valid IQ Score of 60-70*

The regulations require a narrative report accompanying the IQ test that "comment[s] on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a). Relatedly, it is clear that an ALJ may find an IQ score "invalid." *See* 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05C (requiring "valid" IQ score to meet Listing); *Thresher v. Astrue*, 283 Fed. Appx. 473, 475 (9th Cir. 2008) ("We do not doubt that an ALJ can decide that an IQ score is invalid."). Here, Petitioner attempts to argue that a valid IQ score of 60-70 exists by virtue of:

---

[6] In comparison, Paragraph "B" requires only "a valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05B.

**MEMORANDUM DECISION AND ORDER - 9**

(1) a May 15, 2000 "Attestation Statement" from Dr. Frank Deland indicating "mild mental retardation"; (2) a May 2, 2017 "Psychological Evaluation" from Dr. Chad Sombke diagnosing Petitioner with a "mild" intellectual disability and an affective disorder; and (3) a February 4, 2019 "Forensic Mental Health Examination" from Dr. Melinda Jorgensen, concluding that Petitioner's Full Scale IQ score of 67 "places his abilities in the mild intellectual disability range." *See* Informal Brief, pp. 4-8 (Dkt. 36). Contrary to Petitioner's position, however, these reports – in and of themselves – do not establish a listed impairment under the Social Security Act.

To begin, a mere diagnosis does not suffice to establish disability. *See Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). An impairment must have the findings shown in the Listing, and must meet all of the specified medical criteria. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Listed impairments are purposefully set at a high level of severity because they are "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Kennedy*, 738 F.3d at 1176. In short, the above-referenced doctors' diagnoses of an intellectual disability is not enough.

But even if these diagnoses *were* somehow enough (especially when coupled with Dr. Jorgensen's reference to Petitioner's *IQ score* of 67 as is required under Listing 12.05C (*see supra*)),[7] the diagnoses are contradicted by the overall balance of evidence in the record. The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *See Magallanes*, 881 F.2d at 750. In other words, while the medical opinion of a treating physician is entitled to special consideration and weight, it is not necessarily conclusive. *See Rodriguez v.*

---

[7] And setting aside the other issues surrounding, for instance, Dr. Deland's otherwise unsupported one-page diagnosis, and the fact that Dr. Jorgensen's examination took place *a year and a half after* the ALJ issued the Decision (and well after the Appeals Council declined to accept review in June 2018).

**MEMORANDUM DECISION AND ORDER - 10**

*Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  If the treating physician's opinions are not contradicted by another doctor, they may be rejected only for clear and convincing reasons.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Even if the treating physician's opinions are contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons for doing so, supported by substantial evidence in the record.  *See id*.  A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinions is a sufficient reason for rejecting that opinion.  *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  Here, Drs. Deland, Sombke, and Jorgensen's opinions are in direct conflict with other medical providers' opinions.  *See* (AR 22) (ALJ stating:  "However, the results of this testing directly conflict with prior intelligence testing which did not show these types of deficits.").

For example:

- In September 2008, Drs. Jack Naglieri and Achilles Bardos evaluated Petitioner in a correctional setting.  *See* (AR 1137-44).  They concluded:

  > James D. Black's general mental ability was measured using a nonverbal test that required him to answer reasoning and problem-solving questions using abstract geometric designs.  *On this measure he earned a GAMA IQ score of 125, which falls in the Superior category of mental ability.  There is a 90% chance that his true GAMA IQ score falls between 115 (High Average) and 130 (Very Superior).  His GAMA IQ score is ranked at the 95th percentile.  This means that his performance is equal to or greater than that of 95% of people his age in the standardization sample*."

**MEMORANDUM DECISION AND ORDER - 11**

- (AR 1138); *see also* (AR 22) (ALJ concluding that Petitioner's "mental status has generally been intact without significant or sustained longitudinal deficits in attention, concentration, recall, memory, judgment, fund of information, or intelligence.") (citing (AR 1138).

- Also in September 2008, Dr. Sandeep M. Sheth, a psychiatrist in the facility where Petitioner was incarcerated, noted Petitioner completed high school and two years of college; had a GAMA IQ of 125; was fully oriented with good memory and attention. *See* (AR 445). Dr. Sheth diagnosed Petitioner with a depressive disorder and substance abuse dependence or abuse (as did the ALJ), but did not find he had an intellectual disability. *See* (AR 443-46).

- On correctional institution forms, Petitioner's physicians did not classify him as "mentally retarded," despite being presented with a checkbox for the diagnosis. *See, e.g.*, (AR 443, 1065, 1077, 1078, 1084, 1218, 1220, 1279). Rather, physicians nearly always diagnosed Petitioner with depressive or anxiety disorder or substance-related disorder (as did the ALJ). *See, e.g.*, (AR 443, 749, 1065, 1070, 1078, 1084, 1118, 1218, 1220, 1122-23, 1125, 1134, 1211, 1222, 1259-60, 1279, 1282, 1300, 1317).

- In November 2006, Dr. Janet Randall completed a "Summary of MRO [(Mentally Retarded Offender)] Testing," concluding that, "[a]ccording to provisions in BOMHS SOP 21, he is exempt from further screening as a Mentally Retarded Offender." (AR 1145).

- A June 2012 "Mental Status Exam" revealed that Petitioner's "CASAS scores showed academic skills that ranged between 11th grade standards to college equivalency." (AR 1271-72).

- In March 2014, Dr. Jennifer Whitmore assessed Petitioner and opined that he "did not have mental retardation at the time of the alleged offenses" that "[n]either his current presentation nor his history was consistent with subaverage intellectual functioning," and that "[h]is vocabulary, grammar, and verbal fluidity during this evaluation were not consistent with subaverage intelligence." (AR 1468) ("His reports of receiving average grades in regular educational programming, enrolling in the military, having gainful employment, and living independently would all argue against mental retardation."); *see also* (AR 1470) ("In summary, I did not find Mr. Black to have either mental retardation or mental illness at the time of the alleged offenses. There were indications that he may have been under the influence of voluntarily-consumed controlled substances.").

At bottom, Petitioner suffers from several impairments (acknowledged as "severe" by the ALJ (*see* (AR 18)) that impact his ability to work; however, the ALJ provided specific legitimate

**MEMORANDUM DECISION AND ORDER - 12**

reasons for rejecting/questioning certain opinions contained in the medical record – namely, those indicating that Petitioner has an intellectual disability. These opinions were not given the weight Petitioner argues that they deserved, but such opinions were considered in the context of the surrounding medical record. The Court's duty here is not to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court must decide whether the ALJ's decision that Petitioner is not disabled is supported by the record. In this record, there are conflicting medical opinions, testimony, and accounts that inform the ALJ's decisions on how to consider the various opinions, including whether Petitioner's limitations meet or equal an impairment listed in the applicable regulations. The ALJ's decision to discount certain opinions while crediting others is supported by clear and convincing, specific, and legitimate reasons. Because the evidence can reasonably support the ALJ's conclusions in these respects, this Court will not substitute its judgment for that of the ALJ's even if this Court were to have a different view. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

    b.  *Intellectual Disability Before Age 22*

  To satisfy the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05, there must be evidence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before the age of 22." *Supra* (citing *See* 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05). "The requirement of early onset and the reference to claimant's developmental period . . . seem intended to limit coverage to an innate condition, rather than a condition resulting from disease or accident in adulthood." *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1062 (C.D. Cal. 2010).

**MEMORANDUM DECISION AND ORDER - 13**

Petitioner acknowledges that he has no IQ scores before turning 22, arguing instead that his (much) later-in-time IQ score and diagnoses nonetheless apply to inform his intellectual functioning prior to age 22. *See* Informal Brief, pp. 7-8 (Dkt. 36) ("In respects to plaintiff's qualifying IQ scores obtained after the age of 22 . . . , a valid qualifying IQ score obtained by claimant after the age of 22 creates a rebuttable presumption that the claimant's mental retardation begin prior to the age of 22, as it is presumed that IQ scores remain relatively constant during a person's lifetime."). This is true – to satisfy Listing 12.05's early onset requirement, a claimant need not produce IQ tests or other contemporary evidence of mental retardation before age 22; the record need only include some evidence from which a factfinder can infer that the impairment existed before age 22 and is not of recent origin due to a traumatic event or changed circumstances. *See Gomez*, 695 F. Supp. 2d at 1061. Therefore, a valid adult IQ score is entitled to a rebuttable presumption that the adult score is evidence of impairment during the claimant's developmental stage. *See McNeil v. Berryhill*, 2018 WL 5603599, at *20 (E.D. Cal. 2018) (compiling case law from other circuits, before being "persuaded by the reasoning in those cases that support a rebuttable presumption that a valid adult IQ score is evidence of impairment during the claimant's developmental phase."). Here, however, that presumption *is* rebutted in at least three respects.

First, as already stated, the score(s) and diagnoses that Petitioner relies on to create the rebuttable presumption in the first instance are contradicted by other medical providers' opinions in the record. *See supra*. This is to say that, if, in fact, Petitioner does not now have a severe intellectual disability that met or equaled a listed impairment (as the ALJ concluded), it cannot logically be inferred that he had one before turning 22. *See id.* (upholding ALJ's step-three determination). Second, the record is replete with evidence of Petitioner's extensive drug abuse history. *See* (AR 22) (ALJ noting that "[b]oth treating and evaluating medical and mental health

**MEMORANDUM DECISION AND ORDER - 14**

providers have noted his extensive history of using cocaine."); *see also, e.g.*, (AR 783, 934, 938, 1118-20, 1221-22, 1258-60, 1265, 1382-83, 1452, 1461-62, 1466-67, 1469, 1568, 1570, 1573). Therefore, it may be inferred (and thus the presumption rebutted) that, even if Petitioner developed subaverage general intellectual functioning at some point in his life (as evidenced by a low IQ score and/or mental impairment diagnoses (*see supra*)), it correlated with his contemporaneous drug abuse at that same time. Finally, from a practical standpoint, Petitioner graduated from high school without attending any special education classes, went on to attend college, attended Navy bootcamp, drove a forklift at a warehouse job, and obtained a certificate in welding. *See* (AR 22-23, 205, 445, 1276, 1451, 1460-61, 1567). These realities merge to reveal that the medical evidence does not support Petitioner's claims that he had an intellectual disorder before age 22.

Combined with the ALJ's comprehensive consideration of the medical evidence in the balance of the Decision, the ALJ sufficiently explained the basis for her step-three determination. *See Gonzalez*, 914 F.2d at 1201 (9th Cir. 1990) (it is unnecessary for ALJ to state why claimant failed to satisfy every different section of the listing of impairments). In sum, Petitioner failed to show error in the ALJ's step-three findings; Petitioner did not satisfy the criteria for Listing 12.05C.

2. The ALJ's Development of the Record Was Appropriate

"In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). This duty exists when the claimant is represented by counsel, or when appearing pro se. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for a proper evaluation of the evidence triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan v. Halter*, 242 F.3d

**MEMORANDUM DECISION AND ORDER - 15**

1144, 1150 (9th Cir. 2001) (quoting *Smolen*, 80 F.3d at 1288); *see also Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record is further triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Here, Petitioner argues that the ALJ violated her obligation to fully and fairly develop the record in two respects: (1) by not obtaining his complete psychiatric records (in particular, Dr. Deland's May 15, 2000 "Attestation Statement") before issuing the Decision; and (2) by not adequately probing into "whether an individual with [his] learning disability would even be considered eligible to apply for those jobs that the vocational expert found to be available nationally." Informal Brief, pp. 8-10 (Dkt. 36). Neither of these arguments supplies a basis for remanding the action.

To begin, Dr. Deland's "Attestation Statement" was submitted to the Appeals Council. The Appeals Council must consider new evidence, so long as it is "material" to the issues that were before the ALJ, and it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(b), 416,1470(b); *see also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) ("[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence."). Here, the Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision." (AR 7).[8] The undersigned agrees.

---

[8] To the extent Petitioner's arguments in this respect amount to a critique directed at the Appeals Council, it is unfounded. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) ("When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final

**MEMORANDUM DECISION AND ORDER - 16**

Dr. Deland's "Attestation Statement" is overly vague and speculative, as a one-page statement of a mere diagnosis with no legitimate substantiating/corroborating moorings. *See* Ex. A to Informal Brief (Dkt. 36-1). When evaluating medical opinions, the ALJ is not required to accept an opinion that is brief, conclusory, or inadequately supported by objective findings. *See Bayliss*, 427 F.3d at 1216. Regardless, as stated above, Dr. Deland's "Attestation Statement" conflicts with the balance of medical evidence in the record, such that substantial evidence exists to support the ALJ's overall conclusions. *See supra*.

Second, Petitioner's argument that the ALJ did not properly consider his learning disability at the hearing *presumes* that he had a learning disability that required the examination he now claims was improperly omitted. But the ALJ did not find that Petitioner had a learning disability and that finding is not erroneous. *See supra*. *See* (AR 18-19). In assessing Petitioner's residual functional capacity and propounding hypothetical questions to the vocational expert, the ALJ included only those limitations with record support, and properly did not include limitations based on discounted medical opinions or on testimony or statements that she found unreliable. *See Bayliss*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *see also supra*.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d

---

decision of the Commissioner."). In *Taylor*, the Ninth Circuit found that when the Appeals Council considers additional evidence from a treating physician, but denies review, the Council need not provide a "detailed rationale" or make any evidentiary findings for why it rejected the opinions. *See id*. at 1231-32 (citing *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996)). Thus, while the Appeals Council was required to consider Dr. Deland's "Attestation Statement" in assessing whether to grant review, it was not required to provide a detailed explanation for why such evidence did not warrant review of the ALJ's decision.

**MEMORANDUM DECISION AND ORDER - 17**

at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

The evidence can reasonably and rationally support the ALJ's well-formed conclusions, even though such evidence may be susceptible to a different interpretation.  Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence.  Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V.  RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be AFFIRMED and that this action be DISMISSED in its entirety with prejudice.[9]

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period."  Additionally, the other party "may serve and file a response, not exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

## VI.  ORDER

---

[9] This would include Petitioner's recently-filed Motion for Summary Judgment (Dkt. 41) which largely reiterates the arguments raised in Petitioner's opening brief and also responds to Respondent's brief, albeit well-beyond the typical reply period.  To be clear, the undersigned likewise hereby recommends that Petitioner's Motion for Summary Judgment (Dkt. 41) be similarly denied.

**MEMORANDUM DECISION AND ORDER - 18**

On October 19, 2018, the Court denied Petitioner's then-pending Petition for Appointment of Counsel. *See* Order, pp. 2-3 (Dkt. 10). Petitioner seeks reconsideration of that Order, premising his argument on the existence of a mild intellectual disability. *See generally* Pet. for Recons. (Dkt. 23). However, the existence of such a disability, at least in the context of Petitioner's claim to Social Security disability benefits, is debatable. *See supra*.

Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of legal issues involved. *See Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *See id*. Here, Petitioner is not likely to succeed on the merits. *See supra*. Additionally, Petitioner has been able to fully set out the nature of his claim and supporting arguments remarkably well. These realities, considered either separately or in combination, support the undersigned's discretionary decision not to appoint counsel.

IT IS THEREFORE HEREBY ORDERED that Petitioner's Petition for Reconsideration of Appointment of Counsel (Dkt. 23) is DENIED.

DATED: March 13, 2020

_____
Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**